**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **PHENIX LONGHORN, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| **WISTRON CORPORRATION,** | § | |
| | § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Phenix Longhorn, LLC files this Original Complaint for Patent Infringement ("Complaint") against Defendant Wistron Corporation ("Wistron") pursuant to 35 U.S.C. § 271 and in support thereof would respectfully show the Court the following:

**THE PARTIES**

1.     Plaintiff Phenix Longhorn, LLC ("Phenix") is a limited liability company organized and existing under the laws of the State of Texas.  Phenix maintains a registered agent and office in the Eastern District of Texas (this "District") located at 2325 Oak Alley, Tyler, Texas 75702.

2.     Upon information and belief, Defendant Wistron Corporation ("Wistron") is a corporation organized and existing under the laws of Taiwan having its principal place of business at 21F, 88, Sec. 1, Hsin Tai Wu Road, Taipei Hsien 221, Taiwan (ROC).

3. On information and belief, Wistron regularly conducts and transacts business in the State of Texas, throughout the United States, and within this District, and as set forth below, has committed and continues to commit, tortious acts of infringement within and outside the State of Texas and within this District.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code ("U.S.C.") §1, including 35 U.S.C. §§ 271 and 281-285. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5. This Court has personal jurisdiction over the Wistron by virtue of its systematic and continuous contacts with this jurisdiction, as alleged herein, as well as because the injury to Phenix occurred in the State of Texas and the claim for relief possessed by Phenix against Wistron for that injury arose in the State of Texas.  On information and belief, Wistron has purposely availed itself of the privileges of conducting business within the State of Texas, such business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly transacting or soliciting business, engaging in other persistent courses of conduct, or deriving or attempting to derive substantial revenue and financial benefits from goods and services provided to individuals residing in the State of Texas and in this District. Thus, Wistron is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long Arm Statute.

6.      Personal jurisdiction also exists specifically over Wistron because Wistron, directly or through subsidiaries or intermediaries (including customers, distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, sells, imports, advertises, or markets in the State of Texas and in this District, one or more products that infringe the patent-in-suit, as described particularly below. Wistron has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the awareness and/or intent that these products will be purchased by consumers in this District. Wistron has knowingly and purposefully shipped infringing products into and within this District through an established distribution channel. These infringing products have been and continue to be purchased by consumers in this District.

7.      On information and belief, Taiwan is not a signatory to the Hague Service Convention or any other multilateral or bilateral agreement specifying an appropriate means of service. Therefore, Wistron may be served outside the United States pursuant to Fed. R. Civ. P. 4(f)(2) or 4(f)(3).

8.      On information and belief, Wistron provides a continuous and unbroken supply chain placing infringing products in this District. Wistron is an Original Design Manufacturer ("ODM") for television sets specifically manufactured for sale in the United States and, through those activities, has committed the tort of patent infringement using its nationwide contacts and distribution channels to import into, sell, offer for sale, and use these products in this District and elsewhere in the United States.

9.      Phenix's claim for relief for patent infringement arises directly from the activities of Wistron in this District.

10. On information and belief, Wistron, directly and/or through its customers has transacted business in this District and has committed acts of patent infringement in this District. Thus, venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

## THE ASSERTED PATENT

11. On June 19, 2007, United States Patent No. 7,233,305 ("the '305 patent" or "the patent-in-suit") entitled "Gamma Reference Voltage Generator" was duly and legally issued with Richard Orlando and Trevor Blyth as the named inventors, after full and fair examination by the U.S. Patent and Trademark Office. Phenix is the owner, by assignment, of all rights, title, and interest in and to the '305 patent, including the right to sue for and recover all past, present and future damages for infringement of the '305 patent. A copy of the '305 patent is attached hereto as Exhibit A.

## BACKGROUND FACTS

12. The subject matter of the '305 patent is an integrated circuit that improves the color fidelity of liquid crystal display LCD screens, using a technology known as programmable gamma ("PGamma") correction.

13. Mr. Orlando is the co-inventor of the '305 patent and President of Phenix. Prior to Mr. Orlando forming Phenix, he was President of Alta Analog, Inc., ("Alta") a company incorporated in March 2002 to design and manufacture integrated circuits. The Alta products were designed to improve the color fidelity of LCD screens for computer products using Pgamma technology. Alta was the original owner of the '305 patent.

14. On information and belief, Wistron is an ODM that manufactures and sells television sets to various consumer brands in North America, including brands such as Sony, Vivitec and Vizio. These television sets have LCD screens and are popular consumer items sold through brick and mortar retail stores and over the Internet.

15. On information and belief, AU Optronics Corporation ("AUO"), a company organized under the laws of Taiwan (ROC), manufactures and sells LCD panel modules, which are incorporated by Wistron into television sets that it manufactures in Asia. The LCD panel modules made by AUO include the LCD screen itself and circuits to control the LCD screen. Electronic components that are part of the LCD panel module are mounted on one or more printed circuit boards. One of these printed circuit boards is generally referred to as a timing control board or "T-Con" board. Placed inside the television housing, a T-Con board connects to a main circuit board and to the LCD screen that displays an image to a user. All of the intricate timing and data control signals required to form an image on the LCD screen is performed by the T-Con board.

16. On information and belief, at least one T-Con board made by AUO, part number 55.50T28.C03, includes an integrated circuit as a component with part number AUO-1422.1J.

17. On information and belief, Himax Technology Limited ("Himax"), a company organized under the laws of Taiwan (ROC), manufactures and sells the AUO-1422.1J for AUO. The AUO-G1422.1J is a Pgamma integrated circuit that improves the quality of the television users' viewing experience on LCD television sets incorporating this chip.

18. On information and belief, AUO sells LCD panel modules containing the T-Con board, part number 55.50T28.C03, either directly to Wistron or to one of Wistron's authorized subcontractors located in Taiwan and/or the Peoples Republic of China (PRC).

19. On information and belief, Wistron directly manufactures, or has manufactured on its behalf, television set models specifically for importation into the United States. On information and belief, Wistron has all its products designed for sale in the United States reviewed by UL LLC, ("UL") formerly known as Underwriters Laboratories, a private product testing and certification company.

20. According to the UL website, Wistron has manufactured or is manufacturing television sets and other products that were inspected and certified by UL for use in the United States. Attached hereto as Exhibit B is a list of UL approved audio/video apparatuses for the United States and made by Wistron, available at http://www.ul.com, obtained from UL on its online certifications directory, accessed on September 27, 2017.

21. According to the UL online certifications directory, one of the television sets made by Wistron and certified by UL is model number E50u-D2 ("the Infringing Product" or "the E50u-D2").

22. On information and belief, Wistron model number E50u-D2 corresponds to the identical model number marketed and sold under the Vizio brand and displays the UL certification mark on the rear housing of the television set.

23. The E50u-D2 contains the aforementioned T-Con board, part number 55.50T28.C03, with the AUO-1422.1J integrated circuit as a component.

24. The E50u-D2 was available for sale in 2016 at various retail outlets throughout the United States and in this District, specifically including but not limited to, the Costco store located at 3800 Central Expressway, Plano, Texas 75074, which is located in this District.

25. On information and belief, in addition to the E50u-D2, Wistron also manufactures for sale in the United States television sets that are reasonably similar to the E50u-D2 and are thus likely infringing products. The foregoing products include, but are not limited to, the following Wistron model numbers:  E50u-D1, D55f-E2, D55n-E2, E55u-D2, E55-E2, D43-E2, D43f-E2, E43-D2, E43-E2, E43u-D2, D43f-F2, D650i-B2, D65u-D2, E322AR, E40x-C2, E40-C2, E43-C2, D43-D2, E48-C2, E55-C2, E55-D2, E650i-A2, E650i-B2, E65x-C2, D65-D2, KDL-50R450A, LS-20N, LS-20P, LT26PLX-X(*), LT26XXX(*), LT32PLX-X(*), M50-C1, M55-C2, MD41520, P50-C1, P552ui-B2, RS65-B2, SLT26AX(*), SLT27AX(*) and SLT32AX(*), and variations thereof. On information and belief, the abbreviation "(*)" in the foregoing model numbers means one of the following:  0-9, A-Z, a-z, blank, "-" or "/". On information and belief, the symbol "X" in the foregoing model numbers means an alphanumeric character or a blank.

26. On information and belief, Wistron had knowledge or was aware of the '305 patent before the filing of the Complaint, because products marked with the patent number were made, used, offered for sale, and sold in the United States, including but not limited to by Alta Analog, Inc.  At least as of 2009, Alta Analog Inc. marked products with the patent number of the '305 patent, among other places, in the products' data sheets. Thus, Wistron and the public are deemed to have notice of the '305 patent.

## COUNT 1
## DIRECT INFRINGEMENT OF U. S. PATENT NO. 7,233,305

27. Phenix restates and incorporates by reference its allegations in paragraphs 1 through 26 of this Complaint as if fully set forth herein and says, as more fully described below, that Wistron has infringed the '305 patent and will continue to do so unless enjoined by this Court.

28. Wistron has been and is now designing, marketing, testing, making or having made, using, selling, distributing, importing, and/or offering for sale in the United States television sets with LCD panel modules that are comprised of one or more AUO-1422.1J integrated circuits that infringe one or more claims of the '305 patent.

29. On information and belief, the Infringing Product infringes at least claim 1 of the '305 patent because it is comprised of at least one integrated circuit that contains at least the following salient features: a plurality of non-volatile storage cells; circuits for programming coupled to a multiplexer for addressing and programming said storage cells, wherein the addressing is based on a plurality of inputs; drivers connected to said storage cells and to the plurality of outputs; and the plurality of inputs connected to said multiplexer for addressing said storage cells; wherein said voltage signals are gamma reference voltage signals for determining actual driving voltages of columns of a display, wherein said non-volatile storage cells are organized into two or more banks of cells wherein each bank contains a predetermined gamma reference voltage signal display condition; and means to switch between the banks based on one or more external signals.

30. Wistron has been and is now directly infringing the '305 patent by making or having made, designing, testing, using, selling, offering for sale, and/or importing into the United States the Infringing Product.

31. Wistron, directly and/or through subsidiaries or intermediaries, has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '305 patent by making or having made, designing, testing, using, making available for another's use, selling or offering to sell, and/or importing the Infringing Products. Wistron's infringing

activities includes importing, offering for sale, and selling the Infringing Product in the United States.

32. Wistron has committed these acts of infringement without consent, license or authorization from Phenix.

33. By engaging in the conduct described herein, Wistron has caused injury to Phenix, and Phenix has been damaged and continues to be damaged as result thereof, and Wistron is thus liable to Phenix for infringement of the '305 patent, pursuant to 35 U.S.C. § 271(a).

34. As a direct and proximate result of Wistron's infringement of the '305 patent, Phenix has suffered monetary losses for which Phenix is entitled to an award of damages that are adequate to compensate Phenix for Wistron's past infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty on any infringing product made, used, sold, or offered for sale in the United States or elsewhere, together with interest and costs.

35. In addition, the infringing acts and practices of Wistron has caused, is causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Phenix for which there is no adequate remedy at law, and for which Phenix is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Phenix is entitled to compensation for any continuing and/or future infringement up until the date that Wistron is finally and permanently enjoined from further infringement.

## DEMAND FOR JURY TRIAL

36. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38(a), Phenix hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Phenix prays for the following relief:

a) A judgment and order that Wistron has directly infringed (either literally or under the doctrine of equivalents) the '305 patent;

b) A judgment and order permanently enjoining Wistron, its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns and any other person(s) in active concert or participation with Wistron from directly infringing the '305 patent for the full term thereof;

c) A judgment and order requiring Wistron to pay Phenix an award of damages under 35 U.S.C. § 284, adequate to compensate Phenix for Wistron's past infringement, but in no event less than a reasonable royalty, including enhanced damages as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting, as needed, as well as damages for any continuing or future infringement up to and including the date that Wistron is finally and permanently enjoined from further infringement;

d) A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Phenix be awarded a compulsory ongoing licensing fee;

e) A judgment and order that this action be found an exceptional case pursuant to 35 U.S.C. § 285, entitling Phenix to an award of all costs of this action, including attorneys' fees and interest;

f) A judgment and order requiring Wistron to pay Phenix the costs of this action;

      g)      A judgment and order requiring Wistron to pay Phenix pre-judgment and post-judgment interest on the damages award; and

      h)      Such other and further relief as the Court deems just and equitable.

Dated: October 25, 2017

           Respectfully submitted,

           By:   /s/ Nicolas S. Gikkas

           NICOLAS S. GIKKAS (Lead Attorney)
           California State Bar No. 189452
           Email: nsg@gikkaslaw.com

           LEWIS E. HUDNELL, III
           California State Bar No. 218736
           Email: leh@gikkaslaw.com

           THE GIKKAS LAW FIRM, P.C.
           530 Lytton Avenue
           2nd Floor
           Palo Alto, California 94301
           Telephone:  (650) 617-3419
           Facsimile:   (650) 618-2600

           ANDY TINDEL
           Texas State Bar No. 20054500

           MT$^2$ LAW GROUP
           MANN | TINDEL | THOMPSON
           112 East Line Street, Suite 304
           Tyler, Texas 75702
           Telephone:  (903) 596-0900
           Facsimile:   (903) 596-0909
           Email: atindel@andytindel.com

           **ATTORNEYS FOR PLAINTIFF**